IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| HAROLD WOTTON,<br>38 Herindeen Landing<br>Woodstock, CT 06281<br><br>    Plaintiff,<br><br>v.<br><br>VETERINARY ORTHOPEDIC IMPLANTS, LLC,<br>Corporation Trust Center<br>1209 Orange Street<br>Wilmington, DE  19801<br><br>    Defendant. | Case No. _____<br><br>Judge _____ |

## COMPLAINT FOR DECLARATORY JUDGMENT

For his Complaint against Defendant Veterinary Orthopedic Implants, LLC ("VOI"), Plaintiff Harold Wotton ("Wotton") states as follows:

1. This is an action seeking declaratory relief pursuant to 28 U.S.C. §§2201, 2202, and 1332. Specifically, Wotton seeks a declaration that VOI has no right to enforce any of the restrictive covenants contained in, incorporated into or attached to the December 29, 2017 Asset Purchase Agreement (the "APA") between Wotton and non-party Steris Instrument Management Services, Inc. ("IMS"), including but not limited to the Employment Agreement between Wotton and IMS, because IMS purported to assign the Employment Agreement to VOI without Wotton's prior written consent.

### Parties

2. Wotton is an individual who resides in Woodstock, Connecticut.

3. Upon information and belief, VOI is a Delaware limited liability company whose

members reside in states other than Connecticut. Upon information and belief, VOI is owned by or affiliated with Movora United States ("Movora"), a Delaware corporation with its principal place of business in St. Augustine, Florida.

## Jurisdiction and Venue

4. The Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1). There is complete diversity of citizenship between Wotton and VOI, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

5. Venue is proper in this district pursuant to the forum selection clause contained in Paragraph 9.10(b) of the APA, more fully described in Paragraph 7 of this Complaint.

## Factual Allegations

6. Wotton has invented and developed products related to veterinary surgeries, including orthopedic trauma products, internal fixation products, bone anchors, specialty plates, and advanced bio absorbable implants. He has worked in this veterinary field for over 25 years and is well known throughout the United States as a leader in this field. He founded Everost, Inc. in June 2012 and was its majority shareholder.

7. Effective December 29, 2017, IMS as Buyer entered into the APA with Everost, Inc. as Seller and Wotton as Selling Shareholder. A true and correct copy of the APA is attached to this Complaint as **Exhibit A**.

8. As part of and concurrent with the APA, Wotton entered into an Employment Agreement with IMS under which he became employed by IMS. Wotton's execution of the Employment Agreement was a condition of the APA, and the Employment Agreement was attached and incorporated into the APA as Exhibit B. A copy of the Employment Agreement and its Exhibits and Schedules is attached to this Complaint as **Exhibit B**.

9. The Employment Agreement contains a Non-Compete and Non-Solicitation Provision that is attached to the Employment Agreement as Exhibit B (the "Non-Compete") and a Non-Disclosure and Noncompetition Agreement for certain incentive awards (the "Incentive Agreement") that is attached to the Employment Agreement as Schedule 4.

10. The APA at Paragraph 9.07 contains a limited assignment provision that states in relevant part: "This Agreement will be binding upon and will inure to the benefit of the parties hereto and their respective successors and permitted assigns. No party hereto may assign its rights or obligations hereunder without the prior written consent of the other party."

11. The Employment Agreement at Paragraph 10 provides: "This Agreement will be binding in all respects upon, and shall be enforceable by and inure solely to the benefit of, the parties hereto, the Released Parties and the respective successors and permitted assigns of the parties and the Released Parties."

12. The Incentive Agreement attached as Schedule 4 to the Employment Agreement provides at Paragraph 2: "This Agreement is entered into by Employee and [IMS]. However, all obligations owed by Employee to [IMS] shall also be owed by Employee to each Affiliate and their respective successors and assigns. This Agreement shall be valid and effective whether Employee is employed directly by [IMS], or one of its Affiliates, or by one or more of the successors or assigns of [IMS] or its Affiliates, or by any combination of those entities. For purposes of this Agreement, the term 'Affiliate' means any corporation, business, or entity owned by, controlled by, controlling, or under common control with, [IMS]."

13. The Incentive Agreement attached as Schedule 4 to the Employment Agreement further provides at Paragraph 6 that in the event of a breach or threatened breach of the restrictions, IMS "and its successors and assigns" shall be entitled to relief.

14. To the extent any inconsistency exists between Paragraph 9.07 of the APA, Paragraph 10 of the Employment Agreement, and Paragraphs 2 and 6 of the Incentive Agreement attached as Schedule 4 to the Employment Agreement, the limited assignment provision in Paragraph 9.07 of the APA controls.  In this regard, Paragraph 9.06 of the APA provides in relevant part:  "This Agreement and the Transaction Documents . . . constitute the sole and entire agreement of the parties to this Agreement with respect to the subject matter contained herein and therein, and supersede all prior and contemporaneous understandings and agreements, both written and oral, with respect to such subject matter.  In the event of an inconsistency between the statements in the body of this Agreement and those in the Transaction Documents, the Exhibits or the Schedules (other than an exception expressly set forth as such in the Schedule corresponding to such exception), the statements in the body of this Agreement will control."

15. The Employment Agreement is an Exhibit to the APA and the Incentive Agreement is a Schedule to the Employment Agreement. Accordingly, under Paragraph 9.06 of the APA, the assignment provision in the APA controls in the event of any inconsistency involving the assignability of any of those Exhibits and Schedules.

16. In early 2021, IMS notified Wotton of its intention to either close or sell its veterinary surgery business.  After further discussions with IMS, Wotton agreed to spearhead the search for a buyer for IMS' veterinary surgery business.

17. In the summer of 2021, Wotton approached his contacts at Movora about its interest in acquiring the veterinary surgery business from IMS.  As a result of Wotton's introduction and efforts, Movora and IMS began discussions about Movora's potential purchase of IMS' veterinary surgery business.

18. In late 2021, Movora, through its affiliate VOI, entered into a letter of intent to

4

purchase the assets of IMS' veterinary surgery business, and those parties conducted due diligence and negotiated the purchase of IMS' veterinary surgery business.

19. While Movora and/or VOI negotiated the purchase of IMS' veterinary surgery business, Movora had discussions with Wotton about its desire to hire him to continue to lead that veterinary surgery business after the acquisition.

20. In late March 2022, Movora told Wotton that it would not be able to finalize an employment package for him prior to the closing of the purchase, which was scheduled in early May.

21. Movora's representations about hiring Wotton were false as Movora had no intention of hiring Wotton and instead it intended to try to enforce the restrictive covenants described above against him.

22. On or about April 4, 2022, IMS as Seller entered into an Asset Purchase Agreement with VOI as Buyer (the "VOI APA").  Pursuant to the VOI APA, VOI contends that IMS purported to assign Wotton's Employment Agreement to VOI.

23. Although it was required to do so, IMS did not seek or obtain Wotton's prior written consent to assign his Employment Agreement to VOI as required by Paragraph 9.07 of the APA. Nor was VOI a "permitted assignee" of Wotton per Paragraph 10 of the Employment Agreement.  Consequently, any purported assignment of Wotton's Employment Agreement from IMS to VOI is invalid, and VOI has no right to enforce the restrictive covenants contained in and/or attached to the Employment Agreement.

24. VOI is now taking the position that it is entitled to enforce the restrictive covenants contained in Wotton's Employment Agreement with IMS as IMS' purported assignee.  In this

regard, VOI has "reminded" Wotton of the restrictive covenants contained in the Employment Agreement and has stated it may be forced to take immediate action to protect its interests and enforce its rights.

25. Wotton has advised VOI that he is not bound by the restrictive covenants because he never provided his prior written consent to their assignment, as was required under Paragraph 9.07 of the APA.

26. Due to VOI's stated position that it is entitled to enforce the restrictive covenants as IMS' purported assignee, Wotton requires immediate declaratory relief so that he may support himself and is not faced with the specter of being improperly restrained by VOI.

## COUNT I

### Claim for Declaratory Relief

27. Wotton hereby adopts by reference the allegations contained in paragraphs 1-26 of this Complaint as if fully set forth herein.

28. An actual, present, and justiciable controversy exists concerning whether VOI has the right to enforce the restrictive covenants incorporated in and attached to the APA as IMS' purported assignee.

29. Wotton requests the Court to declare that VOI has no right to enforce the restrictive covenants incorporated in and attached to the APA because he did not consent to IMS' purported assignment of the Employment Agreement to VOI as required by Paragraph 9.07 of the APA and/or because VOI is not a "permitted assignee" of Wotton as required by Paragraph 10 of the Employment Agreement.

WHEREFORE, Plaintiff Wotton requests that judgment be entered in his favor and against Defendant VOI, as follows:

(a) An Order declaring that under the terms of the APA, any of the restrictive covenants incorporated into, referred to or attached as Exhibits or Schedules to the APA required Wotton's prior written consent pursuant to Paragraph 9.07 of the APA;

(b) An Order declaring that VOI is not a permitted assignee under the terms of the APA and the Employment Agreement attached as Exhibit B to the APA;

(c) An Order declaring that because Wotton did not provide his prior written consent to any assignment of the restrictive covenants by IMS to VOI, Wotton is not bound by any of those restrictive covenants;

(d) An award of Wotton's reasonable attorney's fees and costs; and

(e) Such other relief that this Court deems just and appropriate.

Respectfully submitted,

*/s/ John F. Marsh*
John F. Marsh (0065345)
Nancy Manougian (0013121)
BAILEY CAVALIERI LLC
10 West Broad Street, Suite 2100
Columbus, Ohio 43215
Telephone: (614) 229-3318
Facsimile:  (614) 221-0479
Email: jmarsh@baileycav.com

*Attorneys for Plaintiff Harold Wotton*