UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| HAROLD WOTTON, ) | Case No. 1:22-cv-01002 |
| ) | |
| Plaintiff and ) | Judge J. Philip Calabrese |
| Counterclaim Defendant, ) | |
| ) | |
| v. ) | |
| ) | |
| VETERINARY ORTHOPEDIC ) | |
| IMPLANTS, LLC, ) | |
| ) | |
| Defendant and ) | |
| Counterclaim Plaintiff. ) | |
| ) | |

# OPINION AND ORDER

This case involves an employment agreement between Plaintiff Harold Wotton and non-party Steris Instrument Management Services, Inc. As part of his employment with Steris, Mr. Wotton agreed to several restrictive covenants. Steris later assigned those covenants to Defendant Veterinary Orthopedic Implants, LLC, which sought to enforce them against Mr. Wotton. As a result, Mr. Wotton filed a complaint seeking a declaratory judgment that Veterinary Orthopedic Implants cannot enforce the restrictive covenants. Defendant moves to dismiss Plaintiff's complaint for failure to state a claim under Rule 12(b)(6) on the ground that the specific assignment provision of the employment agreement at issue and its related covenants control over an assignment provision in the asset purchase agreement by which Steris acquired Mr. Wotton's company and which requires his consent to an assignment. For the reasons that follow, the Court **GRANTS** Defendant's motion.

**FACTUAL AND PROCEDURAL BACKGROUND**

On this motion to dismiss, the Court takes the following allegations in the complaint as true and construes them in Plaintiff's favor.

Plaintiff Harold Wotton was the founder and majority shareholder of Everost, Inc., a company that "invented and developed products related to veterinary surgeries, including orthopedic trauma products, internal fixation products, bone anchors, specialty plates, and advanced bio absorbable implants." (ECF No. 1, ¶ 6, PageID #2.) About five years after founding Everost, Mr. Wotton entered into an asset purchase agreement with Steris Instrument Management Services, Inc. (*Id.*, ¶ 7.)

**A.  Asset Purchase Agreement**

Through the asset purchase agreement, Steris acquired Everost. (*Id.*, ¶ 7.) As part of that agreement, Mr. Wotton entered into an employment agreement in which he became an employee of Steris as the director, lead product development engineer. (*Id.*, ¶ 8; ECF No. 1-2, ¶ 2(a), PageID #110.) According to the complaint, Mr. Wotton's "execution of the Employment Agreement was a condition of the [asset purchase agreement], and the Employment Agreement was attached and incorporated into the [asset purchase agreement]" as an exhibit. (ECF No. 1, ¶ 8, PageID #2.)

Based on the interpretation provision in Section 9.03 of the asset purchase agreement, "[t]he schedules and exhibits referred to in [the asset purchase agreement] will be construed with, and as an integral part of, [the asset purchase agreement] to the same extent as if they were set forth verbatim in this Agreement." (ECF No. 1-1, PageID #59.) In case of inconsistency between the asset purchase

2

agreement and the documents attached to it, the asset purchase agreement contains a priority clause under which the text in the body of the asset purchase agreement controls:

> In the event of any inconsistency between the statements in the body of this Agreement and those in the Transaction Documents, the Exhibits or the Schedules (other than an exception expressly set forth as such in the Schedule corresponding to such exception), the statements in the body of this Agreement will control.

(ECF No. 1, ¶ 14, PageID #4; *see also* ECF No. 1-1, § 9.06, PageID #60.)

In addition, Section 9.07 of the asset purchase agreement contains an assignment clause, which requires written consent to any assignment for the parties to the asset purchase agreement: "This Agreement will be binding upon and will inure to the benefit of the parties hereto and their respective successors and permitted assigns. No party hereto may assign its rights or obligations hereunder without the prior written consent of the other party[.]" (ECF No. 1, ¶ 10, PageID #3; *see also* ECF No. 1-1, § 9.07, PageID #60.)

### B. Employment Agreement

Mr. Wotton's employment agreement also contains an assignment clause, which provides that: "This Agreement will be binding in all respects upon, and shall be enforceable by and inure solely to the benefit of, the parties hereto, the Released Parties and the respective successors and permitted assigns of the parties and the Released Parties." (ECF No. 1, ¶ 10, PageID #3; *see also* ECF No. 1-2, ¶ 10, PageID #107.) This assignment clause, unlike the one in the asset purchase agreement, refers only to "permitted assigns of the parties" and does not specifically require consent to assignment. (*Id.*)

3

Additionally, the employment agreement contains two restrictive covenants: (1) a non-compete and non-solicitation provision, which is attached to the employment agreement as an exhibit; and (2) a non-disclosure and non-competition agreement, contained in an incentive agreement attached to the employment agreement as a schedule. (ECF No. 1, ¶ 9, PageID #3; *see also* ECF No. 1-2, PageID #112–14 & #158–62.)

The incentive agreement's non-disclosure and non-competition agreement contains a separate assignment provision that extends Mr. Wotton's obligations to "the successors or assigns of Steris":

> This Agreement is entered into by [Mr. Wotton] and STERIS. However, all obligations owed by [Mr. Wotton] to STERIS shall also be owed by [Mr. Wotton] to each Affiliate and their respective successors and assigns. This Agreement shall be valid and effective whether [Mr. Wotton] is employed directly by STERIS, or one of its Affiliates, or by one or more of the successors or assigns of STERIS or its Affiliates, or by any combination of these entities.

(ECF No. 1, ¶ 12, PageID #3; *see also* ECF No. 1-2, § 2, PageID #159.) Further, it provides that in the event of a breach of the restrictive covenants, Steris' "successors and assigns shall be entitled to injunctive relief, attorney fees, and such other relief as is proper in the circumstances." (ECF No. 1-2, § 6, PageID #161; ECF No. 1, ¶ 13, PageID #3.)

C. **Veterinary Orthopedic Implants' Asset Purchase Agreement**

In early 2021, Steris informed Mr. Wotton of its intention to either close or sell its veterinary surgery business. (ECF No. 1, ¶ 16, PageID #4.) By late 2021, Veterinary Orthopedic Implants entered into a letter of intent to purchase the assets of Steris' veterinary surgery business. (*Id.*, ¶ 18, PageID #4–5.) During that time,

Veterinary Orthopedic Implants and Mr. Wotton discussed a possible employment arrangement under which Mr. Wotton would continue to lead the veterinary surgery business after the acquisition was finalized. (*Id.*, ¶ 19, PageID #5.) However, these discussions did not pan out. (*Id.*, ¶ 21.) According to the complaint, Veterinary Orthopedic Implants "had no intention of hiring Wotton." (*Id.*)

In early 2022, Veterinary Orthopedic Implants finalized the purchase of Steris' veterinary surgery business through an asset purchase agreement. (*Id.*, ¶ 22.) According to the complaint, this asset purchase agreement assigned Mr. Wotton's employment agreement and its accompanying restrictive covenants to Veterinary Orthopedic Implants. (*Id.*)

## STATEMENT OF THE CASE

Following the purchase, Veterinary Orthopedic Implants sought to enforce the restrictive covenants in Mr. Wotton's employment agreement with Steris. (*Id.*, ¶¶ 24–26, PageID #5–6.) In response, Mr. Wotton filed a complaint, seeking a judgment declaring that Veterinary Orthopedic Implants may not enforce the restrictive covenants. (*Id.*, ¶¶ 27–29, PageID #6.) Veterinary Orthopedic Implants counterclaimed for breach of contract to enforce the restrictive covenants against Mr. Wotton (*see generally* [ECF No. 10](#)) and moves to dismiss the complaint against it ([ECF No. 7](#)).

Plaintiff maintains that, when it sold the assets of its veterinary surgery business, Steris "did not seek or obtain Wotton's prior written consent to assign his

5

Employment Agreement to VOI as required by Section 9.07 of the [asset purchase agreement]." (*Id.*, ¶ 23, PageID #5.)

Defendant reads Section 9.07 as prohibiting only assignments of the asset purchase agreement involving the transaction between Everost and Steris. (ECF No. 7, PageID #201.) In Defendant's view, Section 9.07 does not extend to assignment of Mr. Wotton's employment agreement and the two restrict covenants at issue. (*Id.*)

## GOVERNING LEGAL STANDARDS

At the motion to dismiss stage, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint "states a claim for relief that is plausible, when measured against the elements" of the cause of action asserted. *Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020) (citing *Binno v. American Bar Ass'n*, 826 F.3d 338, 345–46 (6th Cir. 2016)). To meet Rule 8's pleading standard, a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). To state a claim, a complaint must "raise a right to relief above the speculative level" into the "realm of plausible liability." *Twombly*, 550 U.S. at 555.

In assessing plausibility, the Court construes factual allegations in the complaint in the light most favorable to the plaintiff, accepts the factual allegations of the complaint as true, and draws all reasonable inferences in the plaintiff's favor.

6

*Wilburn v. United States*, 616 F. App'x 848, 852 (6th Cir. 2015). In reviewing a motion to dismiss, the Court distinguishes between "well-pled factual allegations," which it must treat as true, and "naked assertions," which it need not treat as true. *Iqbal*, 556 U.S. at 628. The Court will also not accept as true "[c]onclusory allegations or legal conclusions masquerading as factual allegations[.]" *Eidson v. Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

The Declaratory Judgment Act provides that a federal court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought," as long as the controversy is within the court's jurisdiction. 28 U.S.C. § 2201(a). "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). Here, Plaintiff seeks a declaration that Defendant does not have a right to enforce the restrictive covenants included in the asset purchase agreement and his employment agreement and the schedules attached to it. (ECF No. 1, ¶ 1, PageID #1.)

## ANALYSIS

The parties agree that Ohio law governs this dispute, and the employment agreement so provides. (ECF No. 1-2, § 5, PageID #106; *see also* ECF No. 1-1, § 9.10(a), PageID #60.) Generally, "contracts should be construed so as to give effect to the intention of the parties." *Aultman Hosp. Ass'n v. Community Mut. Ins. Co.*, 46 Ohio St. 3d 51, 544 N.E.2d 920, 923 (Ohio 1989); *Eastham v. Chesapeake Appalachia,*

7

*L.L.C.*, 754 F.3d 356, 361 (6th Cir. 2014) (quoting *Sunoco, Inc. (R&M) v. Toledo Edison Co.*, 129 Ohio St. 3d 397, 953 N.E.2d 285, 292 (2011)). The parties' intent is "presumed to reside in the language they chose to employ in the agreement." *Anzalaco v. Graber*, 2012-Ohio-2057, 970 N.E.2d 1143, ¶ 19 (Ohio Ct. App. 2012) (citing *Kelly v. Medical Life Ins. Co.*, 31 Ohio St. 3d 130, 132, 509 N.E.2d 411, 413 (Ohio 1987)).

To discern the parties' intent, courts look to the plain and ordinary meaning of the language in their agreement. *Eastham*, 754 F.3d at 361. A contract "is to be read as a whole and the intent of each part gathered from a consideration of the whole." *Saunders v. Mortensen*, 101 Ohio St. 3d 86, 2004-Ohio-24, 801 N.E.2d 452, ¶ 16. If possible, courts give effect to every provision of a contract and "attempt to reconcile inconsistent contract terms and give effect to each term." *In re Graham Square, Inc.*, 126 F.3d 823, 830 (6th Cir. 1997). In the face of seemingly conflicting provisions, "courts must seek to find a construction that would give effect to each term, and only if such a construction is impossible will the contract be deemed unenforceable." *Export-Import Bank of the U.S. v. Advanced Polymer Scis., Inc.*, 604 F.3d 242, 248 (6th Cir. 2010).

According to the normal rules of contract construction under Ohio law, "an interpretation that would render a provision meaningless 'is neither acceptable nor desirable.'" *State v. Bethel*, 110 Ohio St. 3d 416, 2006-Ohio-4853, 854 N.E.2d 150, ¶ 51 (quoting *Hybud Equip. Corp. v. Sphere Drake Ins. Co.*, 64 Ohio St. 3d 657, 666, 597 N.E.2d 1096 (1992)). Therefore, the Court "must give effect to each provision of

the contract" if doing so is reasonable. *Id.* (citing *Expanded Metal Fire-Proofing Co. v. Noel Constr. Co.*, 87 Ohio St. 428, 434, 101 N.E. 348 (1913)); *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 763 (6th Cir. 2008) (quoting *Stone v. National City Bank*, 106 Ohio App. 3d 212, 665 N.E.2d 746, 752 (1995)).

Ohio law "generally favors the free assignability of contracts absent 'clear contractual language prohibiting assignment.'" *Tidewater Fin. Co. v. Cowns*, 197 Ohio App. 3d 548, 2011-Ohio-6720, 968 N.E.2d 59, ¶ 16 (quoting *Pilkington N. Am., Inc. v. Travelers Cas. & Sur. Co.*, 112 Ohio St. 3d 482, 2006-Ohio-6551, 861 N.E.2d 121, ¶ 36).

## I. Contract Interpretation

Under these principles of Ohio law, interpretation of the plain language of the parties' agreements resolves the dispute about their meaning. The employment agreement and its accompanying restrictive covenants define the relationship between Mr. Wotton and Veterinary Orthopedic Implants as the assignee of Steris. It begins by noting that other parties concurrently entered the asset purchase agreement for the sale of Everost. (ECF No. 1-2, PageID #104.) Though the employment agreement does not say so, the asset purchase agreement identifies Mr. Wotton as one of the parties to the transaction. (ECF No. 1-1, PageID #12.) But the employment agreement—and only the employment agreement—contains the entire agreement regarding Mr. Wotton's employment going forward following the closing date. It provides:

> Entire Agreement. This Agreement, together with the employment offer letter to Executive dated as of an even date herewith, contains the entire understanding between the parties and, except as otherwise set forth

9

> herein, supersedes any prior understandings and agreements between them respecting the within subject matter. There are no representations, agreements, arrangements, or understandings respecting the within subject matter, whether oral or written, between the parties, other than expressly provided herein.

(*Id.*, § 7, PageID #106.) This language makes clear that "the entire understanding between the parties," with respect to Mr. Wotton's employment, is "expressly provided herein." (*Id.*) Under the employment agreement, Mr. Wotton voluntarily agreed to be bound by a non-competition and a non-solicitation provision and, in the incentive agreement, by a non-disclosure and non-competition agreement. (*Id.*, § 2, PageID #104; *see also id.* PageID #112–14 & #158–62.)

> The employment agreement expressly permits assignment:
>
> <u>Assignment</u>. This Agreement will be binding in all respects upon, and shall be enforceable by and inure solely to the benefit of, the parties hereto, the Released Parties and the respective successors and permitted assigns of the parties and the Released Parties.

(*Id.*, § 10, PageID #107.) So does the incentive agreement, which contains the non-disclosure and non-competition agreement. It extends Mr. Wotton's obligations under the agreement to "the successors or assigns of Steris":

> This Agreement is entered into by [Mr. Wotton] and STERIS. However, all obligations owed by [Mr. Wotton] to STERIS shall also be owed by [Mr. Wotton] to each Affiliate and their respective successors and assigns. This Agreement shall be valid and effective whether [Mr. Wotton] is employed directly by STERIS, or one of its Affiliates, or by one or more of the successors or assigns of STERIS or its Affiliates, or by any combination of these entities.

(ECF No. 1-2, § 2, PageID #159.) The non-competition and a non-solicitation provision is silent on assignment.

In the complaint, Plaintiff alleges that Steris assigned Mr. Wotton's employment agreement and two restrictive covenants to Veterinary Orthopedic Implants. (ECF No. 1, ¶ 22, PageID #5.) Contrary to Plaintiff's contention, nothing in the employment agreement or either restrictive covenant requires Mr. Wotton's consent to assignment. And Ohio law generally favors assignment except in circumstances not present here. A plain reading of the parties' agreements shows that Plaintiff fails to state a claim against Defendant. Therefore, Defendant is entitled to dismissal of the declaratory judgment action against it.

## II. The Asset Purchase Agreement

Plaintiff claims that he did not consent to assignment of the employment agreement as the parties' agreements require, making it unenforceable under Ohio law. To support this argument, Plaintiff argues that the asset purchase agreement takes precedence over the employment agreement. This argument relies on Section 9.03 of the asset purchase agreement, its precedence clause. Section 9.03 provides that "[t]he schedules and exhibits referred to in this Agreement will be construed with, and as an integral part of, this Agreement to the same extent as if they were set forth verbatim in this Agreement." (*Id.*, § 9.03, PageID #59.) This argument suffers from the fatal flaw that the parties' dispute involves the employment agreement—not the asset purchase agreement.

Put another way, the transaction between Steris and Everost involved a series of agreements, not just one. To determine its rights and obligations under the escrow agreement, for example, a party would consult the escrow agreement—not the asset purchase agreement. Similarly, to determine their respective rights and

11

responsibilities regarding Mr. Wotton's employment, the parties would look to the employment agreement. On its face and by its own terms, that agreement provides a relatively straightforward answer to the issue at hand.

But even looking to the asset purchase agreement, the terms of that agreement do not say what Mr. Wotton would like. Its precedence clause in Section 9.03 makes the terms of the exhibits and other agreements that were part of the sale of Everost's assets to Steris a part of the asset purchase agreement. Accordingly, if the parties had a dispute over some term in the asset purchase agreement, one would have to read the terms of the asset purchase agreement along with those of the employment agreement (or whatever other agreement might be at issue). But Section 9.03 does *not* work in both directions. It does not push provisions from the asset purchase agreement down to the employment agreement—at least not where, as here, the employment agreement embodies a specific agreement that speaks to and resolves the issue in dispute.

Further, as a matter of contract interpretation, nothing in the asset purchase agreement gives Mr. Wotton a right of consent to the assignment of the employment agreement and its restrictive covenants. Put another way, nothing in the asset purchase agreement vests Mr. Wotton with a right to veto or block a subsequent sale of the assets Everost sold to Steris. Those assets include his employment relationship with Steris, as reflected in the employment agreement and its restrictive covenants.

### II.A. "Permitted Assigns"

Though it does not require consent to assignment, the assignment clause in the employment agreement refers to the "permitted assigns of the parties." (ECF

12

No. 1-2, ¶ 10, PageID #107.) (The assignment provision in the incentive agreement's non-disclosure and non-competition agreement refers merely to "the successors or assigns of Steris." (ECF No. 1-2, § 2, PageID #159.) And the non-compete and non-solicitation provision, attached as an exhibit to the employment agreement, is silent on assignment. (ECF No. 1-2, PageID #112–14.)) This language in the employment agreement echoes that in Section 9.07 of the asset purchase agreement, which binds "the parties hereto and their respective successors and permitted assigns." (ECF No. 1-1, § 9.07, PageID #60.)

Plaintiff points to this language as requiring Mr. Wotton's consent to any assignment. (ECF No. 15, PageID #416.) This arguments falters on the principles under Ohio law for reading a contract. Ohio courts strive to find a construction of competing provisions seemingly in conflict that gives effect to each term unless impossible or unreasonable. *See Export-Import*, 604 F.3d at 248. "[A]n interpretation that would render a provision meaningless 'is neither acceptable nor desirable.'" *Bethel*, 2006-Ohio-4853, ¶ 51 (quoting *Hybud Equip.*, 64 Ohio St. 3d at 666). Plaintiff's interpretation impermissibly reads the employment agreement's assignment provision out of that agreement. Reading the consent language in Section 9.07 as applying to the asset purchase agreement, but not flowing down to the employment agreement, harmonizes the language of the various agreements that were part of the transaction by which Steris acquired Everost.

Additionally, the case on which Plaintiff relies for his argument, *Imagepoint, Inc. v. JPMorgan Chase Bank, National Association*, No. 12-cv-7183 (LAK), 2014 U.S.

13

Dist. LEXIS 109943 (S.D.N.Y. Aug. 8, 2014), explains the use of the term "permitted assigns." That case, involving New York contract law, makes clear that the term "permitted assigns" means either an assignment with consent or an assignment as permitted under the contract or by law. *Id.* at *5. It does not impose an affirmative requirement for consent.

But even if Plaintiff is correct that this interpretation creates an inconsistency, though the Court disagrees on that point, Ohio law directs courts to avoid reading a contract in a way that leads to its invalidity. Plaintiff's proposed reading, to resolve the conflicting assignment provisions at the level of the asset purchase agreement, runs directly contrary to the language of the parties' agreements and their intent. Any inconsistency in the contractual language does not suffice to undertake a shuffling of the parties' substantive rights the acquisition of Everost effected.

### II.B. *Hall*

The parties spend considerable time discussing the Sixth Circuit's decision in *Hall v. Edgewood Partners Insurance Center, Inc.*, 878 F.3d 524 (6th Cir. 2017). Like this case, *Hall* involves an asset purchase agreement that contains an assignment clause requiring consent and separate employment contracts with their own assignment provisions. Applying Ohio law, the court ruled that the asset purchase agreement does not supersede the employment agreements. *Id.* at 528.

The Court makes four brief points about *Hall*.

*First*, the Sixth Circuit decided *Hall* ten days before the closing date for Steris's acquisition of Everost. But nothing in the asset purchase agreement, the employment agreement, or any of the restrictive covenants at issue here suggest that the parties

14

had any knowledge of the ruling. In other words, no language in the agreements shows one way or the other whether the parties intended to follow or repudiate *Hall*.

*Second*, a problem with the plaintiffs' argument in *Hall* involved the identity of the parties at issue. There, as here, the defendant is the assignee of the entity that signed the asset purchase agreement. For this reason, the *Hall* Court noted that, if the plaintiffs there complained that the assignment of their employment contracts breached the asset purchase agreement, then the buyer is the proper party, not the assignee seeking to enforce the employment agreement. *Id*. at 527.

*Third*, the Sixth Circuit reasoned that it makes little sense for the buyer (the party to the asset purchase agreement) to give employees a veto over the transfer to a subsequent buyer. Such a right would deprive the buyer of the benefit of its bargain expressed in the asset purchase agreement. *Id*. at 528. Here, a similar rationale applies. Of course, depending on the relative bargaining power of the parties to any particular transaction, a person in the position of Mr. Wotton might strike a bargain to sell to a particular buyer—and only that particular buyer. In such a case, the language the parties employ in their agreements would make such an intention plain and unambiguous. They did not do so here.

*Fourth*, Plaintiff attempts to distinguish *Hall* by pointing to a differing contract term it claims is material. Specifically, Plaintiff relies on the priority clause in the asset purchase agreement, which provides that "[i]n the event of any inconsistency between the statements in the body of this Agreement and those in the . . . Exhibits or the Schedules . . . , the statements made in the body of the [asset

15

purchase agreement] will control." (ECF No. 1, ¶ 14, PageID #4; *see also* ECF No. 1-1, § 9.06, PageID #60.) Plaintiff argues that the asset purchase agreement in *Hall* contained no such language, leading to a different result here. (ECF No. 15, PageID #412.) Defendant argues that the asset purchase agreement in *Hall* contained a substantially similar provision; however, the Sixth Circuit's ruling provides no indication that is the case, and the Court will not search the record in *Hall* to determine the correctness of this claim. Even if doing so is appropriate, that is not the Court's job. But the plain language of the asset purchase agreement here defeats Plaintiff's argument. In its preamble, the asset purchase agreement defines the term "Agreement" to mean "THIS ASSET PURCHASE AGREEMENT," as in *Hall*. (ECF No. 1-1, PageID #12; *see also id.* (definitions); *Hall*, 878 F.3d at 528.) And in any event, as discussed above, the dispute here centers on the employment agreement not the asset purchase agreement.

### II.C. Intent

In the end, when interpreting a contract, courts seek to effect the intent of the parties as expressed in the plain language of their agreement. Their intent remains the touchstone of the contract. Here, the transaction documents make plain the intent of the parties. Mr. Wotton sold his company, Everost, to Steris through an asset purchase agreement. As part of the consideration for that the sale, Mr. Wotton agreed to the employment agreement and not to compete against Steris. Neither the employment agreement nor either of the restrictive covenants at issue prohibit assignment. To the contrary, the employment agreement expressly permits assignment—with no requirement that Mr. Wotton consent to an assignment.

Accordingly, the intent of the parties leaves little doubt that a material term of their agreement involved Mr. Wotton's future employment and potential competition against Steris or its assignee.

## CONCLUSION

For the foregoing reasons, the express provisions of the parties' agreements foreclose the declaratory judgment Plaintiff seeks.  Therefore, the Court **GRANTS** Defendant's motion to dismiss.

**SO ORDERED.**

Dated:  September 22, 2022

J. Philip Calabrese
United States District Judge
Northern District of Ohio